IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE MACK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIX FLAGS ENTERTAINMENT CORPORATION and SIX FLAGS GREAT ADVENTURE, LLC,<br><br>Defendants. | CIVIL ACTION<br><br>NO. _____<br><br>**(Document Filed Electronically on October 26, 2022)**<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Danielle Mack ("Plaintiff"), on behalf herself and all others similarly situated, brings this Class Action Complaint against Six Flags Entertainment Corporation and Six Flags Great Adventure, LLC (collectively "Defendants"), and hereby states and alleges as follows:

### INTRODUCTION

1. In New Jersey, employers must: (1) pay their employees the mandatory minimum wage under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a4; (2) pay their employees "for all hours worked" under the NJWHL, N.J. Admin. Code § 12:56-5.1; and (3) pay their employees for all "wages due" under the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.2. "Hours worked" includes all time that employers require their employees to "be at his or her place of

1

work." N.J. Admin. Code § 12:56-5.2(a).  Accordingly, under New Jersey law, employers must pay their employees for all time they spend passing through security screenings, *see Farrell v. FedEx Ground Packing, Inc.*, 478 F. Supp 3d 536, 543 (D.N.J. 2020), as well as all time they are required to spend walking to and from their work locations while on the employer's premises, *see Anderson v. Mt Clemens Pottery Co.,* 328 U.S. 680, 690-91 (1946) (holding that time spent walking from time clocks to work benches across an 8-acre facility was compensable); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 50 (1944) (holding compensable the time spent traveling between mine portals and underground work areas).

2. Here, Defendants required Plaintiff and other hourly employees at its "Six Flags Great Adventure & Safari and Hurricane Harbor" amusement park located in Jackson, NJ ("Great Adventure amusement park" or "amusement park") to perform uncompensated work both before and after their compensable shift.

3. Before clocking in at the beginning of their shifts, Defendants required Plaintiff and all other hourly employees to undergo security screenings and then walk long distances across the 510-acre premises of the amusement park to the location of the time clocks.

4. Likewise, at the end of their shifts, Defendants required Plaintiff and all other hourly employees to clock out, walk from the location of the time clocks back across the premises of the amusement park, and then undergo additional security screenings before they were permitted to leave the amusement park.

2

5. These uniform policies described in paragraphs 3 and 4 *supra* required Plaintiff and all other hourly employees to spend significant time on Defendants' premises without being compensated resulting in Plaintiff and all other hourly employees being deprived of wages in violation of New Jersey law.

## JURISDICTION AND VENUE

6. The jurisdiction of this court is invoked pursuant to the Class Action Fairness Act ("CAFA") Pub. L. No. 109-2, 119 Stat. 4 (2005). Plaintiff and Defendants are residents of different states and (without the benefit of discovery) the amount in controversy exceeds $5,000,000.

## PARTIES

7. Plaintiff is an individual presently residing in Point Pleasant, New Jersey (Ocean County). Plaintiff worked for Defendants at their Great Adventure amusement park in July 2021.

8. Defendant Six Flags Entertainment Corporation ("Six Flags Corporation") is a corporate entity with a principal place of business located in Arlington, TX and is incorporated in Delaware.

9. Defendant Six Flags Great Adventure, LLC ("Six Flags LLC") is a New Jersey limited liability company with its principal place of business located in Jackson, NJ (Ocean County) and its registered agent and office is located in Ewing, NJ (Mercer County).

10. Six Flags Corporation "own[s] and operate[s] regional theme parks and

waterparks," and it is "the largest regional theme park operation in the world and the largest operator of waterparks in North America based on the number of parks" it operates. *See* 2021 Annual Report at p. 1 (Ex. 1).

## FACTS

11. Defendants jointly own and operate the 510-acre Great Adventure amusement park:



12. During the past six years, Defendants have jointly employed hundreds of non-exempt hourly workers to work in a variety of occupations at its Great Adventure amusement park including, *inter alia*, ride operators, lifeguards, security, food service staff, gift shop staff, maintenance technicians, performers and other positions. These

individuals are referred to herein as "class members."

13. Defendants jointly employed Plaintiff and other class members as demonstrated by, *inter alia*, the following:

    (a) Six Flags Corporation states that "as of January 2, 2022, we employed 1,970 full-time employees, and over the course of the 2021 operating season we employed approximately 43,000 seasonal employees," 2021 Annual Report (Ex. 1) at p. 12;

    (b) Six Flags Corporation states that its "vision to be the preferred regional destination for entertainment would not be possible without our employees, who are the cornerstone of our commitment to provide the best customer experience for our guests," *id.* at p. 11;

    (c) Six Flags Corporation has control regarding the authority to hire and fire Class Members as reflected by statements in its 2021 Annual Report such as *inter alia*:

- "[w]e reduced seasonal labor during the period that our parks were closed or operating under capacity restrictions," *id.* at p. 2;

- "in December 2021, we made changes to our organizational structure, including to our leadership team, by reducing layers of management, to more effectively align resources to business priorities and empower our park employees," *id.* at p. 11;

- "[o]ur recruiting practices and candidate selection are among our most important activities" and "we utilize social media, virtual job fairs and organizations across the United States to find diverse, enthusiastic and qualified employees," *id.* at p. 13;

- it incurred "employee termination costs of $4.4 million" for the year

ended January 2, 2022," *id.* at p. 3.

(d) Six Flags Corporation has control regarding the authority to promulgate work rules and assignments and to set the Class Members' conditions of employment such as compensation, benefits, and work schedules, including the rate and method of payment, as reflected by statements in its 2021 Annual Report such as *inter alia*:

- "[w]e [ . . . ] temporarily reduced salaries for full-time employees," *id.* at p. 2;

- it "is committed to creating an inclusive environment that fully embraces the diversity of our employees," *id.* at p. 12;

- it will "conduct ongoing employee satisfaction surveys" and that "management from both corporate and the parks meet routinely to review the survey results and develop action plans in response to the employee feedback," *id.* at p. 13;

- "[o]ur compensation programs are designed to align the compensation of our employees with our performance and to provide the proper incentive to attract, motivate and retain employees to achieve superior results," *id.* at p. 13;

- it "provide[s] employee wages that are competitive and consistent with employee positions, skill levels, experience, knowledge and geographic location," *id.* at p. 13;

- it offers benefits and health insurance to certain employees, *id.* at p. 13; and

- it implements a "safety and security program" that it expects employees to participate in, *id.* at p. 14;

(e) Six Flags Corporation is involved in supervision of the Class Members as reflected by statements in its 2021 Annual Report such as *inter alia*:

- "[w]e are committed to advancing a purpose-led vision and fostering a culture that encourages our employees to enhance our business and the communities in which we operate," *id.* at p. 11;

- "the Company's success will be realized through the engagement and empowerment of our employees," *id.* at p. 11;

- it trains its leaders "by providing instruction on how to lead open and honest conversations with employees," *id.* at p. 12;

- it "seek[s] to continuously elevate employee development and training through a variety of programs, opportunities, and resources" which includes providing "our guest-facing employees with specialized training," *id.* at p. 12; and

- it engages in "efforts in educating our employees on diversity and inclusion," *id.* at p. 13.

(f)   Upon information and belief, Six Flags LLC has control over the Class Members' employment records, such as payroll, insurance, and taxes.

14.   During the past six years, Defendants required Plaintiff and other class members to enter its Great Adventure amusement park at its main entrance, undergo security screenings, and then walk long distances, usually for 5 to 20 minutes, to their assigned work location at which point they could finally clock in to start getting paid. This common policy resulted in Plaintiff and other class members performing uncompensated work.

15.   Also, during the past six years, Defendants required Plaintiff and other class members to clock out to stop getting paid and then walk long distances, usually for 5 to 20 minutes, and undergo additional security screenings before they were permitted to leave the Great Adventure amusement park. This common policy resulted

in Plaintiff and other class members performing uncompensated work.

16. As a result of Defendants' failure to pay for undergoing security screenings and for the walking time to and from the security screenings at the Great Adventure amusement park, Defendants failed to pay Plaintiff and other class members for each of their hours worked as required under New Jersey law, and Defendants failed to Plaintiff and other class members for all their wages that were due.

17. Defendants agreed to pay Plaintiff and other class members at a promised hourly rate for all of their hours worked as required under New Jersey law.

18. For example, during Plaintiff's employment, Defendants required Plaintiff to undergo a security screening after entering the Great Adventure Amusement Park and then Plaintiff had to walk a distance of approximately 500 yards to her work location before she could clock in to begin getting paid. Also, Defendants required Plaintiff to clock out at the end of her shift to stop getting paid and then walk a distance of approximately 500 yards to the entrance of the park wherein Defendants required her to go through another security screening before she could leave the Great Adventure amusement park. Plaintiff estimates that the uncompensated security screenings and walking time at the beginning of her shift and at the end of her shift combined took approximately 10-40 minutes each day to complete.

19. Since Defendants promised Plaintiff that she would be paid $12 per hour

8

for each hour worked,[1] Defendants' failure to pay for time spent undergoing security screenings at the Great Adventure amusement park and for the walking time to and from the security screenings resulted in Plaintiff not receiving the minimum wage for each of her hours worked.

20. Defendants also promised all other class members that they would be paid at or slightly above the minimum wage for each hour worked. As a result, Defendants' failure to pay for time spent undergoing security screenings at the Great Adventure amusement park and for the walking time to and from the security screenings, which on average took between 10 to 40 minutes each day, resulted in class members not receiving the minimum wage for all hours during the weeks in which they worked.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this claim on behalf of herself and all other class members who are defined as follows:

> All current and former employees of Defendants who were employed as hourly, non-exempt workers at the Great Adventure amusement park at any time from October 26, 2016, through the date of final judgment in this matter.

22. Class action treatment of this action appropriate because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied. In particular:

(a) The class includes hundreds of individuals, all of whom are readily

---

[1] Plaintiff was paid $15 for the first day of her employment but was paid $12 for the rest of her employment.

ascertainable based on Defendants' records and are so numerous that joinder of all class members is impracticable.

(b) Plaintiff is a class member, her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

(c) Plaintiff and her lawyers will fairly and adequately represent the class members and their interests.

(d) Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' common business policies and practices, as summarized herein. The legality of these practices will be determined through the application of generally applicable legal principles to common facts.

(e) Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## LEGAL CLAIMS

### COUNT I
### Violation of the New Jersey Wage and Hour Law

23. All previous paragraphs are incorporated as though fully set forth herein.

24. Plaintiff and other class members are employees entitled to the NJWHL's protections.

25. Defendants are employers covered by the NJWHL.

26. The NJWHL provides that employers must pay their employees "at a rate of not less than" the applicable minimum wage. N.J.S.A. § 34:11-56a4.

27. Defendants' failure to pay Plaintiff and class members for time spent undergoing security screenings and for the walking time before and after the security screenings before and after their paid shifts at the Great Adventure amusement park resulted in Plaintiff and class members not receiving the mandatory minimum wage during weeks in which they worked.

28. The NJWHL also requires that employers pay employees "for all hours worked." N.J. Admin. Code § 12:56-5.1.

29. Defendants' failure to pay Plaintiff and class members for time spend undergoing security screenings and for the walking time before and after the security screenings before and after their paid shifts at the Great Adventure amusement park resulted in Plaintiff and class members not being paid "for all hours worked." N.J. Admin. Code § 12:56-5.1; *see also Farrell v. FedEx Ground Packing, Inc.*, 478 F. Supp 3d 536, 543 (D.N.J. 2020).

## COUNT II
### Violation of New Jersey Wage Payment Law

30. All previous paragraphs are incorporated as though fully set forth herein.

31. Plaintiffs and other class members are employees entitled to the NJWPL's protections.

32. Defendants are employers covered by the NJWPL.

33. The NJWPL requires that Plaintiffs and other class members receive all wages due. See N.J. Stat. § 34:11-4.2.

34. Defendants violated the NJWPL, and their agreement with Plaintiff and other class members, by failing to pay Plaintiff and class members for all wages due, including time spent undergoing security screenings and for the walking time before and after the security screenings before and after their paid shifts at the Great Adventure amusement park.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks the following relief on behalf of herself and all other class members:

1. Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Appoint Plaintiff as class representative;

3. Appoint the undersigned law firms as class counsel;

4. Award Plaintiff and other class members compensatory damages, including unpaid minimum wages, and unpaid wages for all hours worked;

5. Award liquidated damages, interest, attorney's fees and costs pursuant under the NJWHL and NJWPL; and

6. Award such other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a jury trial.

Date: October 26, 2022            s/ Mark J. Gottesfeld
                                  Peter Winebrake*
                                  R. Andrew Santillo, Esq. (NJ ID #025512004)

Mark J. Gottesfeld, Esq. (NJ ID #027652009)
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone:  (215) 884-2491
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

Richard Hayber, Esq.*
Thomas Durkin, Esq.*
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT  06103
Phone:  (860) 920-5362

**pro hac vice* admission anticipated

*Attorneys for Plaintiff*